```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
 2                  NEWPORT NEWS DIVISION

 3

 4  _____)
                                  )
    UNITED STATES OF AMERICA       )
 5                                 )
                                  )
 6  v.                             )   Criminal Case No.:
                                  )   4:24 CR 72
    KRISTOPHER ARMON WARREN,        )
 7  et al.                         )
                                  )
    _____)
 8                                     November 18, 2024

 9        COMPLETE TRANSCRIPT OF ARRAIGNMENT HEARING
            BEFORE THE HONORABLE RODERICK C. YOUNG
10            UNITED STATES DISTRICT COURT JUDGE

11

12  APPEARANCES:

13  David M. Coleman, Esquire
    OFFICE OF THE UNITED STATES ATTORNEY
14  One City Center
    11815 Fountain Way
15  Suite 200
    Newport News, VA 23606
16
                Counsel on behalf of the United States
17

18  Kristopher Armon Warren, pro se

19  Elliott Bruce Bender, Esquire
    BENDER LAW GROUP, PLLC
20  6 West Broad Street
    Richmond, VA 23220
21
                Standby counsel on behalf of Defendant
22              Kristopher Armon Warren

23

24              TRACY J. STROH, RPR
                OFFICIAL COURT REPORTER
25            UNITED STATES DISTRICT COURT
```

```
 1  Appearances (Continuing):

 2  S.W. Dawson, Esquire
    DAWSON PLC
 3  PO Box 58
    Norfolk, Virginia 23501

 4
              Counsel on behalf of the Defendant
 5            Montrell D'Angelo Norman

 6

 7  Eric Randy Davis, pro se

 8  Jose E. Aponte, Esquire
    BAIN SHELDON PLC
 9  9030 Three Chopt Road
    Suite B
10  Richmond, Virginia 23229

11            Counsel on behalf of the Defendant
              Eric Randy Davis
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (The proceeding commenced at 2:03 p.m.)

2              THE CLERK:  In the matter of Criminal Case

3    Number 4:24 CR 72, *United States of America v. Warren,*

4    *et al.*

5              The United States is represented by Mack

6    Coleman.  Defendant Kristopher Armon Warren is appearing

7    pro se.  Defendant Montrell D'Angelo Norman is represented

8    by S.W. Dawson.  Defendant Eric Randy Davis is appearing

9    pro se.

10             Mr. Coleman, is the government ready to proceed?

11             MR. COLEMAN:  The United States is ready.

12             Good afternoon, Your Honor.

13             THE COURT:  Good afternoon.

14             THE CLERK:  Mr. Warren, are you ready to

15   proceed?

16             DEFENDANT WARREN:  Yes.

17             THE COURT:  Mr. Dawson, is your client ready to

18   proceed?

19             MR. DAWSON:  Mr. Norman is ready.

20             Good afternoon, Your Honor.

21             THE CLERK:  And, Mr. Davis, are you ready to

22   proceed?

23             DEFENDANT DAVIS:  Yes, ma'am.

24             THE COURT:  All right.  So we have a counsel

25   issue first --

1          THE CLERK:  We do, yes.

2          THE COURT:  -- is that correct?

3          All right.  One moment --

4          MR. COLEMAN:  Yes, sir.

5          THE COURT:  -- Mr. Coleman.

6          All right.  So -- so, Mr. Warren, would you

7    stand up where you are, sir?

8          All right, Mr. Warren.  So it was my

9    understanding that you had indicated that you were going

10   to hire an attorney.

11          Have you hired someone to represent you?

12          DEFENDANT WARREN:  No, I haven't.

13          THE COURT:  Okay.  All right.  Is that because

14   you don't have the money to hire someone?

15          DEFENDANT WARREN:  No, that's not the case.

16          THE COURT:  All right.  What's the case?

17          DEFENDANT WARREN:  So I was trying to correct

18   the record as far as my name.  But as far as getting an

19   attorney, I felt the need that I did not need an attorney

20   due to the fact that I've been prejudiced under the

21   idem of sonans.

22          THE COURT:  Okay.

23          DEFENDANT WARREN:  Under the doctrine of

24   idem sonans.

25          THE COURT REPORTER:  That I've been prejudiced

1   by what?

2            DEFENDANT WARREN:  I've been prejudiced by --

3            THE COURT:  Don't get so close to the

4   microphone.

5            DEFENDANT WARREN:  Oh, I'm sorry.

6            THE COURT:  Just speak loudly.  Just stand up

7   straight and speak loudly.

8            DEFENDANT WARREN:  I've been prejudiced under

9   the doctrine of idem sonans, and I was here to correct the

10  record.  My intent was to correct the record and add my

11  name change in the case.

12           THE COURT:  Okay.  Come to the podium for a

13  second, sir.

14           DEFENDANT WARREN:  Do I need to bring my --

15           THE COURT:  I don't think you'll need it, but

16  you can bring it if you'd like to.

17           DEFENDANT WARREN:  Yes.

18           THE COURT:  All right.  You don't have to get

19  too close to the mic.

20           DEFENDANT WARREN:  All right.

21           THE COURT:  All right.  Thank you.

22           So a couple things.  So you didn't hire someone

23  because you don't want a lawyer to represent you; is that

24  correct?

25           DEFENDANT WARREN:  No, it's not about wanting a

1   lawyer.  It's just I'm a private civilian under

2   Article III, Section 2, Clause 1, and that I mentioned

3   earlier, I've been prejudiced under the doctrine of

4   idem sonans and I'm here to correct the record.  And my

5   intent, I went to the clerk, as far as my name change, and

6   I was trying to put my name change on my case, but she

7   said that I had to make a motion, which wasn't true.  So

8   I'm here to correct the record --

9           THE COURT:  Okay.  We'll deal with your name

10  change in a moment.  So all I'm dealing with is are you

11  planning to hire a lawyer to represent you?

12          DEFENDANT WARREN:  No.

13          THE COURT:  Okay.  So does that mean you want

14  to -- it's your desire to represent yourself?

15          DEFENDANT WARREN:  Yes.

16          THE COURT:  All right.  Okay.  All right.  Go

17  back.  You can return to your seat and have a seat.

18          DEFENDANT WARREN:  Okay.

19          THE COURT:  All right.  Thank you.

20          All right.  Mr. Davis, is that your name, sir?

21          DEFENDANT DAVIS:  Yes, sir.

22          THE COURT:  And so we got Mr. Warren,

23  Mr. Norman, and Mr. Davis?

24          DEFENDANT DAVIS:  Mr. Norman and Mr. Davis.

25          THE COURT:  You're Mr. Davis.

1         DEFENDANT DAVIS:  Yes, sir.

2         THE COURT:  All right.  Mr. Warren.

3         DEFENDANT DAVIS:  Norman.

4         THE COURT:  Norman.  I'm sorry.  Can you come to

5  the podium, please?

6         MR. DAWSON:  Mr. Norman?

7         THE COURT:  Yes.  That's not your client,

8  correct?

9         MR. DAWSON:  This is my client, Mr. Norman.

10         THE COURT:  Okay.

11         Mr. Davis.  All right.  Could you come to the

12  podium, sir?  Thank you.

13         All right, Mr. Davis.  So it's my understanding

14  that you had intended to hire a lawyer to represent you.

15  Have you hired someone?

16         DEFENDANT DAVIS:  Not as of right now, sir.  I

17  have someone that's in mind that I've been talking to.  I

18  just got my license, my ID and my stuff back last week

19  Thursday.

20         THE COURT:  Okay.

21         DEFENDANT DAVIS:  So I really didn't have the

22  time.  Because I wanted to go meet the lawyer, but I

23  couldn't travel due to my -- I didn't have my license and

24  stuff on me.  So I -- I wanted to go see -- she wanted to

25  meet face-to-face, stuff like that.  So I told her I'm

1    going to see can I get more time also so I could come see

2    her and stuff like that.

3            I just was short on time, for real, because that

4    whole week -- when I was released on a Thursday, that

5    whole week I didn't have no license or nothing to move

6    around, or my phone, because they took my phones.

7            So where I stay at, both of my parents was

8    working so I didn't have no phone access to really call

9    around to get a lawyer.  But I had called her on Friday of

10   last week and was able to talk to her, told her I had

11   court and stuff today, Monday, and stuff like that.  So I

12   was telling her if I can get them to push it back, I can

13   maybe, like, get her to -- retain, I could retain her.

14           THE COURT:  Okay.  Have you -- have you talked

15   to either of the lawyers back there?

16           DEFENDANT DAVIS:  No.  I just saw them this

17   morning.  I haven't spoken to anybody.

18           THE COURT:  You haven't talked to them at all?

19           DEFENDANT DAVIS:  Not to those lawyers, no.

20           THE COURT:  Okay.  All right.  Very good.

21           All right.  Well, I'm going to provisionally

22   appoint one of those lawyers to represent you.

23           DEFENDANT DAVIS:  Okay.

24           THE COURT:  And then what we'll do is that --

25           DEFENDANT DAVIS:  Would I be able to retain my

1  lawyer?

2           THE COURT:  Just a minute.  Let me finish.  All

3  right.  And then if you retain someone --

4           DEFENDANT DAVIS:  Yeah.

5           THE COURT:  -- that's fine, and they can file a

6  notice of appearance, and I will relieve that lawyer.

7           DEFENDANT DAVIS:  Okay.

8           THE COURT:  And then if you don't -- you're not

9  able to retain someone, you have representation.

10          DEFENDANT DAVIS:  Thank you.

11          THE COURT:  All right?

12          DEFENDANT DAVIS:  Thank you.

13          THE COURT:  Okay.  So I'm going to appoint

14 Mr. Bender to represent you.

15          DEFENDANT DAVIS:  Mr. Bender?

16          THE COURT:  Have either of you talked to

17 Mr. Davis?

18          MR. APONTE:  No, sir, Judge.

19          And, Your Honor, good morning -- or good

20 afternoon.

21          THE COURT:  Yeah.

22          MR. APONTE:  I'll tell the Court, when we

23 received the e-mail from Ms. Jones, Ms. Jones indicated

24 that if he were to retain counsel, I would be appointed to

25 Mr. Davis.

1          THE COURT:  Okay.  You can represent him.

2  That's fine.  All right.

3          Okay.  So what I'll do, then, I'm going to go

4  ahead and appoint Mr. Aponte to represent you, and if

5  you -- you're able to hire a lawyer, that's fine, we will

6  do that, and they can file a notice of substitution.

7          DEFENDANT DAVIS:  Yes, sir.

8          THE COURT:  If you don't, then Mr. Aponte will

9  represent you.

10          DEFENDANT DAVIS:  Yes, sir.

11          THE COURT:  However, I will let you know that if

12  the Court finds that you are able to afford a lawyer and

13  you don't hire someone else, you'll have to pay the Court

14  for Mr. Aponte's representation.

15          DEFENDANT DAVIS:  Yes, sir.

16          THE COURT:  Do you understand that?

17          DEFENDANT DAVIS:  Yes, sir.

18          THE COURT:  Okay.  Very good.

19          Have you had a chance to go over the indictment

20  with him?

21          MR. APONTE:  Judge, I have not.

22          THE COURT:  That's fine.  So I'm going to take a

23  recess for you to --

24          MR. APONTE:  Yes, sir.

25          THE COURT:  -- go over the indictment with him

1    and to -- and to discuss the government's complex case

2    motion.

3                MR. APONTE:  Absolutely.

4                THE COURT:  Would you do that?

5                All right.  Go ahead and return to your seat.

6                All right.  Mr. Warren, will you return to the

7    podium, please.

8                THE CLERK:  Judge, do you want Mr. Davis to fill

9    out the financial information so it's on the record?

10               THE COURT:  Yes, when we take a recess.  I'm

11   going to take a recess here in a minute.

12               THE CLERK:  Okay.

13               DEFENDANT WARREN:  Yes.

14               THE COURT:  All right.  Now -- well, I'm going

15   to ask you some -- I'm going take a recess --

16               DEFENDANT WARREN:  Okay.

17               THE COURT:  -- for Mr. Aponte to talk to

18   Mr. Davis.  But when I come back, I'm going to have some

19   questions for you about why you think it's in your best

20   interest to represent yourself.

21               DEFENDANT WARREN:  Okay.

22               THE COURT:  I've looked at this indictment.

23   This is a complicated fraud indictment, and so I'm going

24   to have a number of questions for you about representing

25   yourself and, you know, whether you think that's in your

1   best interest after you answer those questions.  Okay?

2           DEFENDANT WARREN:  Okay.

3           THE COURT:  All right.  So you may return to

4   your seat.

5           I'm going to take a recess, Mr. Aponte --

6           MR. APONTE:  Yes, sir.

7           THE COURT:  -- and then we'll be back and go

8   forward with the arraignment.

9           (Recess from 2:10 p.m. until 2:28 p.m.)

10          THE COURT:  All right.  So, Mr. Coleman, here's

11  what we're going to do.  I'm going to go ahead and --

12  we're going to go ahead and arraign Mr. Norman and

13  Mr. Davis first, and then I'm going to deal with

14  Mr. Warren.

15          MR. COLEMAN:  Okay.  Yes, Judge.

16          THE COURT:  All right.  But go ahead and let's

17  have the penalties --

18          MR. COLEMAN:  Do you want the penalties on the

19  record?

20          THE COURT:  -- and everything, speedy trial

21  cutoff and all of that.

22          MR. COLEMAN:  Yes, Judge.

23          Judge, we're here today for arraignment for

24  three defendants, Mr. Warren, Mr. Norman, and Mr. Davis.

25  Mr. Warren is named in 36 counts.

1          Count One charges conspiracy to commit bank
2     fraud.  That carries 30 years of incarceration, up to
3     5 years of supervised release, a $1 million fine, a $100
4     special assessment, forfeiture and restitution.

5          Counts Two through Sixteen charge bank fraud,
6     which, again, carry 30 years of incarceration, 5 years of
7     supervised release, a $1 million fine, a $100 special
8     assessment, forfeiture and restitution.  And that's for
9     each of those counts.

10         And then Count Seventeen --

11         THE COURT:  Is each defendant charged in --

12         MR. COLEMAN:  No, Your Honor.  Mr. Norman is
13    charged with five counts of bank fraud.  That's Counts
14    Nine, Eleven through Thirteen and Sixteen.

15         And Mr. Davis is charged with six counts of bank
16    fraud, Counts Nine, Eleven through Fourteen and
17    Count Sixteen.

18         And then the next charges, false statements to
19    the United States, that's Count Eighteen through
20    Twenty-one.  That's just Mr. Warren.  That carries up to
21    5 years of incarceration, 3 years of supervised release, a
22    $250,000 fine, a $100 special assessment, restitution, and
23    no forfeiture on that count.

24         THE COURT:  All right.

25         MR. COLEMAN:  Counts Twenty-two through Thirty

1   charge making, uttering, and possessing forged securities

2   of a private entity.  Mr. Warren is charged in all of

3   those counts.  Mr. Norman is charged in three counts of

4   that, Counts Twenty-eight through Thirty.  Mr. Davis is

5   also charged in three counts of that, Twenty-eight through

6   Thirty.  Those carry up to 10 years of incarceration,

7   3 years of supervised release, a $250,000 fine, a $100

8   special assessment, forfeiture and restitution.

9           And then Counts Thirty-one through Thirty-five

10  charge aggravated identity theft.  Mr. Warren is charged

11  in all of those counts.  Mr. Norman is charged in Counts

12  Thirty-two through Thirty-five, four counts of that.

13  Mr. Davis is charged in Counts Thirty-one through

14  Thirty-five.  Aggravated identity theft carries a

15  mandatory minimum of 2 years of incarceration that must

16  run consecutive to any other sentence imposed, 1 year of

17  supervised release, a $100 special assessment, a $250,000

18  fine and restitution.

19          And then finally, Count Thirty-six charges just

20  Mr. Warren with unlawful possession of a postal key -- or

21  keys, rather, and that carries up to 10 years of

22  incarceration, 3 years of supervised release, a $250,000

23  fine, a $100 special assessment, restitution, and no

24  forfeiture on that count.

25          THE COURT:  All right.  Speedy trial?

1    MR. COLEMAN:  The speedy trial deadline the

2  government calculates as January 17th, 2025.  The

3  government does have a motion to designate the case

4  complex and set it outside speedy trial.

5    THE COURT:  All right.  I think you missed

6  Count Seventeen.

7    MR. COLEMAN:  My apologies.  Count Seventeen

8  charges theft of government property.  That's just

9  Mr. Warren.  And Count Seventeen carries up to 10 years of

10  incarceration, 3 years of supervised release, a $250,000

11  fine, a $100 special assessment, forfeiture and then

12  restitution as well, Your Honor.

13    THE COURT:  Okay.  So with respect to the Due

14  Process Protection Act, are you aware of your obligations

15  under *Brady v. Maryland* and its progeny and what discovery

16  you must produce?

17    MR. COLEMAN:  Absolutely.  Yes, Your Honor.

18    THE COURT:  And what exculpatory evidence you

19  must produce?

20    MR. COLEMAN:  Yes, Your Honor.  We'll comply

21  with all of our discovery obligations.

22    THE COURT:  And you understand that by not doing

23  so in a timely manner, that may result in serious

24  consequences, including, but not limited to, the exclusion

25  of evidence, adverse jury instructions, dismissal of

1    charges, contempt proceedings, disciplinary actions or

2    sanctions by the Court.  Do you understand that?

3              MR. COLEMAN:  Yes, Your Honor.

4              THE COURT:  All right.  So I'm going to go ahead

5    and endorse, for all three defendants, Due Process

6    Protection Act orders, memorializing that you understand

7    your obligation.

8              MR. COLEMAN:  Thank you.

9              THE COURT:  All right.  Thank you.

10             All right.  You may return to your seat.

11             MR. COLEMAN:  Thank you.

12             THE COURT:  All right.  So I'm going to have

13   Mr. Norman and Mr. Davis stand where you are with your

14   lawyers.

15             All right.  First, Mr. Davis, did you sign this

16   financial affidavit?

17             DEFENDANT DAVIS:  Yes, sir.

18             THE COURT:  Okay.  All right.  I'm going to

19   find, for the reasons that I stated earlier, that you're

20   entitled to at least provisional CJA counsel.  And, again,

21   if it's determined that you can afford counsel, you'll

22   have to reimburse the Court.  If you hire your own lawyer,

23   that's fine.  Okay?

24             All right.  So I'm going to ask a question --

25   I'm going to ask you all questions.  And so how we'll do

1   it is this.  The first question is going to be state your

2   full name, and I'll say, "Mr. Norman," and, Mr. Norman,

3   you state your full name, and then, Mr. Davis, you state

4   your full name.  And we'll do that for each question until

5   we're done.  Okay?

6           All right.  Madam clerk, would you please place

7   the defendants under oath.

8           THE CLERK:  If you'll raise your right hands,

9   please.

10          (Defendant Norman and Defendant Davis were sworn

11          by the clerk.)

12          THE COURT:  All right.  Would you state your

13  full name, please.  Mr. Norman.

14          DEFENDANT NORMAN:  Montrell D'Angelo Norman.

15          THE COURT:  All right.  And I'll ask you to

16  speak up really loud so the young lady in front of me can

17  hear you.

18          DEFENDANT NORMAN:  Montrell D'Angelo Norman.

19          THE COURT:  All right.

20          And, Mr. Davis.

21          DEFENDANT DAVIS:  Eric Davis.

22          THE COURT:  All right.  How old are you?

23  Mr. Norman.

24          DEFENDANT NORMAN:  Twenty-two.

25          THE COURT:  Mr. Davis.

1                    DEFENDANT DAVIS:  Thirty-one.

2                    THE COURT:  All right.  How far did you go in

3    school?  Mr. Norman.

4                    DEFENDANT NORMAN:  Twelfth grade.

5                    THE COURT:  All right.  Mr. Davis.

6                    DEFENDANT DAVIS:  Twelfth grade.  I graduated.

7                    THE COURT:  All right.  Are you able to read,

8    write and understand the English language without the aid

9    of an interpreter?  Mr. Norman.

10                   DEFENDANT NORMAN:  Yes.  Yes, sir.

11                   THE COURT:  Mr. Davis.

12                   DEFENDANT DAVIS:  Yes, sir.

13                   THE COURT:  All right.  Are you under the

14   influence of any drugs or alcohol this afternoon?

15   Mr. Norman.

16                   DEFENDANT NORMAN:  No, sir.

17                   THE COURT:  Mr. Davis.

18                   DEFENDANT DAVIS:  No, sir.

19                   THE COURT:  All right.  Have you ever been

20   treated by a doctor for any type of mental illness?

21   Mr. Norman.

22                   DEFENDANT NORMAN:  No, sir.

23                   THE COURT:  Mr. Davis.

24                   DEFENDANT DAVIS:  No, sir.

25                   THE COURT:  All right.  Now, have you received a

 1   copy of the indictment in this case?  Mr. Norman.

 2              DEFENDANT NORMAN:  Yes, sir.

 3              THE COURT:  Mr. Davis.

 4              DEFENDANT DAVIS:  Yes, sir.

 5              THE COURT:  All right.  Have you reviewed that

 6   indictment with your attorney?  Mr. Norman.

 7              DEFENDANT NORMAN:  Yes, sir.

 8              THE COURT:  Mr. Davis.

 9              DEFENDANT DAVIS:  Yes, sir.

10              THE COURT:  All right.  Do you understand the

11   charges against you?  Mr. Norman.

12              DEFENDANT NORMAN:  Yes, sir.

13              THE COURT:  Mr. Davis.

14              DEFENDANT DAVIS:  Yes, sir.

15              THE COURT:  All right.  Do you -- I had the

16   government put all the maximum penalties on the record.

17   Do you understand the maximum penalties?  Mr. Norman.

18              DEFENDANT NORMAN:  Yes, sir.

19              THE COURT:  Mr. Davis.

20              DEFENDANT DAVIS:  Yes, sir.

21              THE COURT:  All right.  Do you understand the

22   questions I've asked you so far?  Mr. Norman.

23              DEFENDANT NORMAN:  Yes, sir.

24              THE COURT:  Mr. Davis.

25              DEFENDANT DAVIS:  Yes, sir.

1          THE COURT:  All right.  Now, these questions are

2    for your lawyers.

3          So, counsel, do you agree with the government's

4    speedy trial calculation?  Counsel for Mr. Norman.

5          MR. DAWSON:  Yes, Your Honor.

6          THE COURT:  Counsel for Mr. Davis.

7          MR. APONTE:  Yes, Your Honor.

8          THE COURT:  All right.  Now, the government has

9    filed a motion requesting to set the matter outside of the

10   normal 70-day speedy trial window based on the complexity

11   of the case.  Have you had an opportunity to discuss the

12   government's motion with your client?  Mr. Norman.

13         MR. DAWSON:  I have, Your Honor.

14         THE COURT:  All right.  Counsel for Mr. Davis.

15         MR. APONTE:  Yes, Your Honor.

16         THE COURT:  All right.  Does your client have

17   any objection to designating the case as complex?  Counsel

18   for Mr. Norman.

19         MR. DAWSON:  No objection, Your Honor.

20         THE COURT:  All right.  Counsel for Mr. Davis.

21         MR. APONTE:  No objection, Your Honor.

22         THE COURT:  All right.  As counsel for your

23   client, do you have any objection to designating the case

24   as complex?  Counsel for Mr. Norman.

25         MR. DAWSON:  I have no objection, Your Honor.

```
1              THE COURT:  All right.  Counsel for Mr. Davis.

2              MR. APONTE:  No, sir.

3              THE COURT:  All right.  Have you had a

4  sufficient opportunity to review the indictment with your

5  client prior to appearing before me today?  Counsel for

6  Mr. Norman.

7              MR. DAWSON:  I have, Your Honor.

8              THE COURT:  Counsel for Mr. Davis.

9              MR. APONTE:  Preliminarily, yes, sir.

10             THE COURT:  All right.  Do you need more time to

11 review it before --

12             MR. APONTE:  No, sir, not at this juncture --

13             THE COURT:  -- for the purposes of arraignment?

14             MR. APONTE:  For purposes of arraignment, we're

15 good, sir.

16             THE COURT:  All right.  Now, does your client

17 waive a formal reading of the indictment?  Counsel for

18 Mr. Norman.

19             MR. DAWSON:  We will, Your Honor, yes.

20             THE COURT:  Counsel for Mr. Davis.

21             MR. APONTE:  Yes, sir.

22             THE COURT:  All right.  Ms. Jones.

23             THE CLERK:  Mr. Norman, you understand the

24 charges against you.  I ask you now, what is your plea as

25 to Counts One, Nine, Eleven through Thirteen, Sixteen,
```

1  Twenty-eight through Thirty and Thirty-two through

2  Thirty-five, guilty or not guilty?

3              DEFENDANT NORMAN:  Not guilty.

4              THE CLERK:  And do you request a trial by the

5  Court or by jury?

6              DEFENDANT NORMAN:  By jury.

7              THE CLERK:  Mr. Davis, you understand the

8  charges against you.  I ask you now, what is your plea as

9  to Counts One, Nine, Eleven through Fourteen, Sixteen and

10 Twenty-eight through Thirty-five, guilty or not guilty?

11             DEFENDANT DAVIS:  Not guilty.

12             THE CLERK:  And do you request a trial by the

13 Court or by jury?

14             DEFENDANT DAVIS:  By jury.

15             THE CLERK:  Thank you.

16             THE COURT:  All right.  So there will be an

17 order that more fully explains this, but I find that given

18 the complex nature of the case, and hearing no objection

19 from either of the defendants about the same, I find that

20 the ends of justice are served by setting the trial

21 outside of the normal 70-day speedy trial cutoff and that

22 that is outweighed by the best interest of the public and

23 the defendant in a speedy trial.

24             All right.  Do we have -- I will issue a

25 scheduling order regarding all of the deadlines, but any

23

1  motions that are to be filed are due 14 days from today's

2  date.  But depending on when we set the trial date, I will

3  probably give some extra time in my order for the filing

4  of motions.  All right?

5            All right, Ms. Jones.  Let's see if we can find

6  a trial date.

7            THE CLERK:  All right, Your Honor.  I discussed

8  with the parties and for a ten-day trial, they have agreed

9  to June 9th at 9:15 a.m.

10           THE COURT:  Okay.  Very good.

11           And I have a couple of discovery orders here,

12 and I will sign those.  All right.

13           All right.  So I believe that's all we need to

14 do for you all.

15           Counsel for Mr. Norman, I'll ask you, anything

16 else?

17           MR. DAWSON:  No, Your Honor.  Thank you.

18           THE COURT:  Counsel for Mr. Davis, anything

19 else?

20           MR. APONTE:  No, sir.

21           THE COURT:  All right.  Mr. Coleman, anything

22 else on these defendants?

23           MR. COLEMAN:  No, Your Honor.  Thank you.

24           THE COURT:  Okay.  Very good.

25           All right.  You all are free to go.  Thank you

1  very much.  Okay.  Thank you.

2            All right, Mr. Warren.  Will you come to the

3  podium for a moment, please.

4            DEFENDANT WARREN:  Yes, sir.

5            THE COURT:  All right.  Now, you have a right to

6  refuse to have counsel and represent yourself.  However,

7  you have to be made aware of the advantages and the

8  disadvantages of proceeding without counsel.  So to that

9  end, Mr. Warren, I have some questions for you.  All

10  right?

11            Have you ever studied law, Mr. Warren?

12            DEFENDANT WARREN:  Yes.

13            THE COURT:  All right.  Where did you study law?

14            DEFENDANT WARREN:  Primarily, by myself.

15            THE COURT:  All right.  Have you ever

16  represented yourself in a criminal action before?

17            DEFENDANT WARREN:  No.  I've never been in a

18  criminal action before.

19            THE COURT:  All right.  Do you understand the

20  nature of the crimes that you're charged with?

21            DEFENDANT WARREN:  These crimes are under this

22  state's name, and I can't take the liability of the

23  state's name.

24            THE COURT:  I'm not asking you about liability

25  of the state's name.  I'm asking you do you

1  understand what's in that indictment?

2          DEFENDANT WARREN:  Yes, I understand.

3          THE COURT:  Okay.  Very good.  All right.

4          Okay.  Now, do you understand -- have you ever

5  worked with the United States Sentencing Guidelines

6  before?

7          DEFENDANT WARREN:  No.

8          THE COURT:  Okay.  Now, do you understand that

9  if you represent yourself, that I can't help you and that

10 you're going to be on your own for any of the proceedings

11 that are before this court?  Do you understand that?

12         DEFENDANT WARREN:  I fully understand.

13         THE COURT:  All right.  Are you familiar with

14 the Rules of Evidence?

15         DEFENDANT WARREN:  Yes.  I'm also familiar with

16 the intent -- well, my intent.

17         THE COURT:  All right.  Do you understand the

18 Rules of Evidence?

19         DEFENDANT WARREN:  Yes, as I also understand my

20 intent.

21         THE COURT:  Do you understand the hearsay rules

22 in the Rules of Evidence?

23         DEFENDANT WARREN:  Yes, as I also understand my

24 intent.

25         THE COURT:  What rule is the hearsay rule?  Do

1    you know the number of that rule?

2              DEFENDANT WARREN:  Not off the top of my head.

3              THE COURT:  Okay.  Are you familiar with the

4    rules -- the Federal Rules of Criminal Procedure?

5              DEFENDANT WARREN:  Can you say that question

6    again?

7              THE COURT:  Sure.  Are you familiar with the

8    Federal Rules of Criminal Procedure?

9              DEFENDANT WARREN:  Yes.

10              THE COURT:  All right.  Are you familiar with a

11    Rule 29 under the Federal Rules of Criminal Procedure?

12              DEFENDANT WARREN:  Yes.

13              THE COURT:  What's a Rule 29?

14              DEFENDANT WARREN:  I need to state that?

15              THE COURT:  I'm asking you what it is.  You said

16    you're familiar with it.

17              DEFENDANT WARREN:  Yes, I'm familiar.

18              THE COURT:  So if you're familiar with it, I'm

19    asking you what it is.

20              DEFENDANT WARREN:  I don't think that I need to

21    state any rules.

22              THE COURT:  You just said to me, though, that

23    you understand what that rule --

24              DEFENDANT WARREN:  Yes, I understand, but --

25              THE COURT:  So hold on a second.  So I'm asking

1  you what that rule is.  I'm not asking you for a big

2  dissertation on it.

3           DEFENDANT WARREN:  So being --

4           THE COURT:  Just a second.  She can only type

5  when one of us is talking.  So when I talk, she's only

6  going to type what I'm saying.

7           So I'm not asking for a long explanation.  I'm

8  just asking what Rule 29 is under the Federal Rules of

9  Criminal Procedure.

10          DEFENDANT WARREN:  Well, my intent today wasn't

11 to basically talk about rules.  My intent was to --

12          THE COURT:  Is your intent today to represent

13 yourself?

14          DEFENDANT WARREN:  No.  My intent today was to

15 basically merge my names, the state's name and my actual

16 name that my mother and father gave me.

17          THE COURT:  We'll deal with the name in a

18 second, but I have to deal with this issue about your --

19 about whether or not you're going to represent yourself or

20 whether --

21          DEFENDANT WARREN:  Because --

22          THE COURT:  Just a minute. -- whether or not

23 you're going to represent yourself or whether you're going

24 to have an attorney to represent you.  All right?  So

25 that's why I'm asking you these questions.

1          DEFENDANT WARREN:  They'd be representing the

2     state's name that's in all caps, and that's not my name.

3          THE COURT:  We can deal with that, but I need to

4     know if you're going to have a lawyer first or not.

5          DEFENDANT WARREN:  I will not have a lawyer.

6          THE COURT:  Okay.  All right.  So let me finish

7     asking you these questions, then.

8          All right.  So it's my understanding that even

9     though you said you're familiar with what a Rule 29 is,

10    that you cannot explain that to me at this time; is that

11    correct?

12         DEFENDANT WARREN:  No.  You asked if I

13    understood it, and I understand it.

14         THE COURT:  Okay.  Can you tell me what it is?

15         DEFENDANT WARREN:  Not at this time, I can't.

16         THE COURT:  Okay.  Are you familiar with the

17    local rules for the Eastern District of Virginia?  Are you

18    familiar with these court's local rules?

19         DEFENDANT WARREN:  Can you state that question

20    again?

21         THE COURT:  Sure.  Are you familiar with the

22    local rules for the Eastern District of Virginia?

23         DEFENDANT WARREN:  I know that all these answers

24    are being put on record so I wanted to put on record that

25    my notice of intent at this time was not to answer any

29

1  questions as far as rules but to get my merger from my

2  name change.

3           THE COURT:  Uh-huh.  I understand that.  And

4  we're -- again, we're going to get to your name change.

5  But again, I'm asking you, are you familiar with the local

6  rules for the Eastern District of Virginia?

7           DEFENDANT WARREN:  I'm familiar.

8           THE COURT:  All right.  Are you familiar with

9  the statutes that you're charged under?

10           DEFENDANT WARREN:  I'm familiar that the laws

11  that I'm -- that the state's name is charged under.

12           THE COURT:  Sure.  Okay.  Very good.

13           Now, do you understand that if you represent

14  yourself, that the rules governing a criminal action -- so

15  the Federal Rules of Evidence, the Federal Rules of

16  Criminal Procedure, the United States Sentencing

17  Guidelines, the rules that are in there -- they're not

18  going to be relaxed for you if you're representing

19  yourself?

20           DEFENDANT WARREN:  Yes, because I'm a surety,

21  and the name that you guys want me to represent is a

22  debtor, and I'm not a debtor.

23           THE COURT:  Okay.  All right.  Now, do you

24  understand these questions that I've asked you so far?

25           DEFENDANT WARREN:  I've understood every

1  question you've asked, Your Honor.

2          THE COURT:  Very good.  So it's my opinion that

3  you should have a lawyer to represent you.

4          DEFENDANT WARREN:  I don't -- I don't believe

5  that I need a lawyer to represent me.

6          THE COURT:  Okay.  All right.  Very good.

7          So I'm just going to say, it's my opinion that a

8  trained lawyer would defend you far better than you can

9  defend yourself, and I think -- don't say anything right

10  now.

11          I think that it would be unwise for you to try

12  to represent yourself.  To the contrary, I don't think

13  that you're familiar with some of the rules that I talked

14  to you about, and so I think you would be much better

15  served having a lawyer represent you, and I strongly

16  recommend that you do that --

17          DEFENDANT WARREN:  These rules --

18          THE COURT:  -- especially -- hold on, I'm not

19  finished yet -- considering the penalties that you may

20  face and considering my recommendation to you.  Is it

21  still your desire to represent yourself, Mr. Warren?

22          DEFENDANT WARREN:  I'm a private civilian under

23  Article III, Section 2, Clause 1, and I've been prejudiced

24  under the doctrine of idem sonans as these rules do not

25  apply to private people being that my name, in all caps,

1   is not my name.

2          My name that my mother and father honor me with

3   is capital K, lower case R, lower case I, lower case S,

4   lower case T, lower case O, lower case P, lower case H,

5   lower case E, lower case R, no middle name, capital W,

6   lower case A, lower case R, lower case R, lower case E,

7   lower case N.

8          THE COURT:  Okay.  Again, I'm going to get to

9   your name.  Is it -- so my question for you is, is it

10  still your desire to represent yourself, Mr. Warren?

11         DEFENDANT WARREN:  The emphasis on my name --

12  because the only reason I'm emphasizing my name as much is

13  because I can't be liable for the state's name.

14         The reason I am here is because I've been

15  prejudiced and I've noticed the prejudice.  The name in

16  all caps is not my name.  That's the state's name.  I

17  cannot take liability for something that's not my name.

18         So I understand your rules, I understand your

19  questions, but I do not need legal counsel for rules for

20  the state's name when that is not my state's name.

21         I'm here to tender my name change, and I also

22  would like to get an official copy of the indictment so I

23  can tender that as well.

24         THE COURT:  Do you not have a copy of the

25  indictment?

1          DEFENDANT WARREN:  Not an official copy.

2          THE COURT:  Okay.  Do you want to represent

3    yourself or are you asking the Court to appoint a lawyer

4    for you?

5          DEFENDANT WARREN:  I'm not asking the Court to

6    do anything for me.

7          THE COURT:  Do you want to represent yourself,

8    Mr. Warren?

9          DEFENDANT WARREN:  I've already stated what I

10   wanted to do, Your Honor.

11         THE COURT:  That didn't answer my question,

12   though.  My question is -- I need to know whether to

13   appoint a lawyer for you or not, Mr. Warren.

14         DEFENDANT WARREN:  You do not need to appoint a

15   lawyer for me.

16         THE COURT:  So if I'm not appointing a lawyer

17   for you, that means you want to represent yourself?

18         DEFENDANT WARREN:  I would not like to represent

19   the state's name.

20         THE COURT:  Mr. Bender, I'm going to

21   provisionally appoint you to represent Mr. Warren.  Come

22   forward, please.

23         DEFENDANT WARREN:  I would not like to be

24   represented by any state lawyer.

25         THE COURT:  Okay.  Thank you.  You may return to

33

1   your seat.

2               DEFENDANT WARREN:  Thank you.

3               THE COURT:  All right.

4               What time is our next arraignment?

5               THE CLERK:  It's 3:30.

6               THE COURT:  3:30?

7               THE CLERK:  Yeah.

8               THE COURT:  Okay.  So, Mr. Bender, I'm going to

9   take a recess and give you a few minutes to review the

10  indictment with Mr. Warren.  I think he has maybe a name

11  change that he'd like to make.  If he has that, you can

12  make that motion, and then we will continue with his

13  arraignment.

14              DEFENDANT WARREN:  I would not like to be

15  represented by Mr. Bender, and I have not asked to be

16  represented by Mr. Bender.

17              THE COURT:  That's why I asked you if you wanted

18  to represent yourself or if you wanted to hire a lawyer.

19              DEFENDANT WARREN:  And I stated I would not like

20  to hire a lawyer or be represented by a lawyer.

21              THE COURT:  Okay.  I've heard you.  It's

22  overruled.  Thank you very much.  You can return to your

23  seat.

24              DEFENDANT WARREN:  I'd like to represent myself.

25              THE COURT:  You'd like to represent yourself?

1           DEFENDANT WARREN:  (Nodding head.)

2           THE COURT:  All right.

3           Mr. Bender, I'm appointing you as standby

4   counsel.  So will you still talk to Mr. Warren?

5           So I find that Mr. Warren has knowingly and

6   voluntarily waived his right to counsel and that he is

7   competent and capable of making such a waiver.

8           I will therefore permit him to represent

9   himself, and I'm going to appoint Mr. Elliott Bender as

10  standby counsel.

11          So, Mr. Bender, I'm going to take a few minutes'

12  recess for you to -- Mr. Warren, you can't go anywhere

13  right now.

14          Mr. Bender, I'm going to take a recess for you

15  to review the indictment with Mr. Warren, and then I'll

16  come back for an arraignment with Mr. Warren.  Okay?

17          All right.

18          (Recess from 2:52 p.m. until 3:02 p.m.)

19          THE COURT:  All right.  Mr. Bender, would you

20  and Mr. Warren come to the podium, please.

21          All right, Mr. Bender.  So before I get to the

22  arraignment, is there anything you want to tell me about

23  Mr. Warren's name?

24          MR. BENDER:  If you can hear me okay,

25  Your Honor.

1                THE COURT:  Yes.

2                MR. BENDER:  I have made an effort to try to

3     speak with Mr. Warren, explained to him -- or tried to

4     explain to him what my role would be, that I will not

5     necessarily hijack his personal representation, but I'm

6     here as standby to answer questions, to solve those

7     things.

8                I wanted to go over the indictment, was not able

9     to do that.  I was able to say just, if they could, to his

10    mother and him, just listen to me for a second, and in

11    very broad terms --

12               THE COURT:  Okay.

13               MR. BENDER:  -- described what larceny was,

14    what -- how it becomes federal court, whether it's the

15    postal service or whether --

16               THE COURT:  Right.

17               MR. BENDER:  -- things of that nature.

18               I did sort of suggest what I thought, that they

19    can accord the name change is because I -- just from

20    what he -- Mr. Warren has a right, I guess, not to talk to

21    me and doesn't want to talk with me, at least not at this

22    point.

23               THE COURT:  Okay.

24               MR. BENDER:  So I don't know, but I explained to

25    him that I think he's trying to change his -- eliminate

1   his middle name and I guess it's the upper case and lower

2   case.

3              THE COURT:  Okay.

4              MR. BENDER:  But I don't know that any more than

5   what the Court knows.  So I'm sorry.  That's a long-winded

6   answer for the Court's question.

7              THE COURT:  That's fine.

8              So I can do two things.  I have an arraignment

9   at 3:30.  If you think it would be beneficial, I can give

10  you until after that arraignment to talk to Mr. Warren,

11  but Mr. Warren is not -- if you're under the impression

12  that Mr. Warren is not going to talk to you, we'll just go

13  forward with the arraignment.  You tell me.

14             MR. BENDER:  At this stage, Your Honor, I

15  think -- I could read it to him, but I think that's not

16  going to -- I'm not going to get any feedback if he

17  understands or doesn't understand, that is my concern, and

18  ask questions about it.

19             So I would maybe suggest we go forward today,

20  and I'll mail him a copy of the indictment and maybe make

21  some notes on it and send him some case law or some

22  statutes that he could look up.

23             THE COURT:  Okay.

24             Mr. Warren.

25             DEFENDANT WARREN:  Yes.  At this time, I would

37

 1  not like legal representation.  As I stated before, I'd

 2  like to represent myself.

 3          THE COURT:  You're representing yourself.  You

 4  just have what's called standby counsel.  So you're

 5  representing yourself, and if you have legal questions,

 6  you have someone to ask, but you don't have to ask them

 7  anything.  But the Court traditionally, in a setting like

 8  this where someone represents themself, will typically

 9  appoint standby counsel, and so that's what I've done.

10          Would you like some time to go over the

11  indictment with your standby counsel --

12          DEFENDANT WARREN:  No.

13          THE COURT:  -- or do you want to go forward?

14          DEFENDANT WARREN:  I don't need time to go

15  forward with the standby counsel.

16          THE COURT:  Okay.  Very good.

17          Mr. Coleman -- so I'm going to get you to step

18  back for a moment, Mr. Warren.

19          I know you did it already, but I'm going to get

20  you to put the penalties on the --

21          MR. COLEMAN:  Yes, Your Honor.

22          THE COURT:  -- on the record again, Mr. Coleman,

23  as it relates to the charges that Mr. Warren here faces.

24          MR. COLEMAN:  Yes, Your Honor.

25          THE COURT:  All right.

1              Step back to your table for a second.

2              All right.  Go ahead, Mr. Coleman.

3              MR. COLEMAN:  Your Honor, Mr. Warren's charged

4  with 36 counts in the indictment here.  Count One is

5  conspiracy to commit bank fraud.  That carries 30 years --

6  up to 30 years in prison, 5 years of supervised release, a

7  $1 million fine, a $100 special assessment, forfeiture and

8  restitution.

9              Counts Two through Sixteen carry the same

10 penalty as Count One, Your Honor.  Those are all bank

11 fraud.

12             Count Seventeen charges theft of government

13 property, which carries up to 10 years of incarceration,

14 up to 3 years of supervised release, a $250,000 fine, a

15 $100 special assessment, forfeiture and restitution.

16             Counts Eighteen through Twenty-one charge making

17 false statements to an agency of the United States, which

18 carries up to 5 years of incarceration, 3 years of

19 supervised release, a $250,000 fine, a $100 special

20 assessment and restitution.

21             Counts Twenty-two through Thirty charge making,

22 uttering, or possessing forged securities of a private

23 entity, which has a statutory maximum penalty of up to

24 10 years of incarceration, up to 3 years of supervised

25 release, a $250,000 fine, a $100 special assessment,

1 forfeiture and restitution.

2          Counts Thirty-one through Thirty-five charge

3 aggravated identity theft, which carry 2 years mandatory

4 minimum consecutive to any other sentence imposed, up to

5 1 year of supervised release, a $100 special assessment, a

6 $250,000 fine, restitution.

7          And then finally, Count Thirty-six charges

8 unlawful possession of postal keys, which carries a

9 statutory maximum penalty of up to 10 years of

10 incarceration, up to 3 years of supervised release, a

11 $250,000 fine, a $100 special assessment and restitution.

12          Mr. Warren is named in all of the counts in the

13 indictment, and on counts where there are multiple counts,

14 obviously, each of those carry this separate penalty,

15 Your Honor.

16          THE COURT:  All right.  With respect to speedy

17 trial, I know you previously filed a motion to designate

18 the case complex, and I've already made the finding

19 that --

20          MR. COLEMAN:  Yes, Your Honor.

21          THE COURT:  -- it is a complex case, and I've

22 set it outside of speedy trial.  But for the purposes of

23 the record, could you just put on the record why --

24          MR. COLEMAN:  Yes, Your Honor.

25          THE COURT:  -- you made that motion?

40

1      MR. COLEMAN:  Your Honor, we'd ask the Court to
2  designate the case as complex litigation pursuant to
3  Title 18, United States Code, Section 3161(h)(7)(B)(ii).
4  And in support of that motion, we would flag for the Court
5  that the offenses charged here are very complex.  The
6  defendants are named in a 36-count indictment that
7  includes voluminous general allegations and alleges a
8  multifaceted check fraud scheme here that ran over the
9  course of several years.  The fraud loss here is in excess
10 of a million dollars.

11      The offense conduct involves fraud in multiple
12 jurisdictions as well, Your Honor.  It includes conduct in
13 the Eastern District of Virginia, of course, but also in
14 North Carolina, Delaware, Maryland, Georgia, among other
15 jurisdictions.

16      There were also corresponding law enforcement
17 investigations from some of these other jurisdictions,
18 which have been folded into this case as it's being
19 currently charged.

20      The discovery here is also voluminous.  It
21 includes voluminous business records.  It includes
22 extractions of electronic devices seized from the
23 defendant.  It includes recorded jail calls where the
24 defendant discusses the crimes at issue.  It includes
25 body-worn camera footage of arrests where the defendant

1  was found in possession of fraudulent credit cards and

2  other indicia of fraud, currency.

3          It includes thousands of pages of social media

4  records where the defendant talks about committing the

5  crimes at issue.

6          The first production here includes more than --

7  approximately -- between 30 and 60 gigabytes of data, and

8  we're still processing and continuing to produce

9  additional evidence that is relevant in this case.

10         There are also multiple defendants here.

11         And then finally, there's also been some delay

12  on behalf of the defendants in retaining counsel.  So I'd

13  flag that for the Court as well.

14         But for all of those reasons, we'd ask the Court

15  to designate the case complex, set it outside the speedy

16  trial on the date the Court already identified, June 9th

17  of 2025, so that -- and find that the ends of justice

18  justify setting it outside of the speedy trial deadline in

19  January, Your Honor.

20         THE COURT:  Okay.  Thank you very much.

21         MR. COLEMAN:  Thank you.

22         THE COURT:  All right, Mr. Warren.  Would you

23  come back to the podium, please.

24         All right, Mr. Warren.  So you're before the

25  Court this afternoon for an arraignment.  What I'm going

42

1  to do is I need to ask you some questions.  Before I ask

2  you any questions, I'll ask my courtroom deputy to place

3  you under oath.

4           All right, Ms. Jones.  Go ahead.

5           THE CLERK:  If you'll raise your right hand,

6  please.  Mr. Warren, will you raise your right hand?

7           (Defendant Warren was sworn by the clerk.)

8           THE CLERK:  Thank you.

9           THE COURT:  Thank you.

10          All right, sir.  Would you -- Mr. Warren, would

11  you state your full name, please.

12          DEFENDANT WARREN:  Kristopher Warren.

13          THE COURT:  All right.  How old are you,

14  Mr. Warren?

15          DEFENDANT WARREN:  Twenty-four years old.

16          THE COURT:  All right.  How far did you go in

17  school?

18          DEFENDANT WARREN:  Currently in school.

19          THE COURT:  All right.  What's the last grade or

20  level of school that you completed?

21          DEFENDANT WARREN:  Junior in college.

22          THE COURT:  All right.  Are you able to read,

23  write and understand the English language without the aid

24  of an interpreter?

25          DEFENDANT WARREN:  Yes.

1          THE COURT:  Are you under the influence of any

2  drugs or alcohol this afternoon?

3          DEFENDANT WARREN:  No.

4          THE COURT:  All right.  Have you ever been

5  treated by a doctor for any type of mental illness?

6          DEFENDANT WARREN:  No.

7          THE COURT:  Okay.  Have you received a copy of

8  your indictment?

9          DEFENDANT WARREN:  As of now, yes.

10         THE COURT:  All right.  Now, I know you did not

11  talk to Mr. Bender about the indictment because you chose

12  not to talk to him, but do you understand the charges

13  against you?

14         DEFENDANT WARREN:  Yes.  And I would like to

15  tender payment on the indictment.

16         THE COURT:  Just a moment.  We'll get to that.

17         Do you understand the maximum penalties

18  involved?

19         DEFENDANT WARREN:  Yes.

20         THE COURT:  All right.  Do you understand the

21  questions I've asked you up to this point?

22         DEFENDANT WARREN:  Yes.

23         THE COURT:  Do you waive a reading of the full

24  indictment?

25         DEFENDANT WARREN:  Can you repeat that?

44

```
 1              THE COURT:  Do you waive -- do you need the --
 2  do you need my courtroom deputy to read the indictment to
 3  you?
 4              DEFENDANT WARREN:  No.
 5              THE COURT:  All right.
 6              All right, Ms. Jones.  Would you please arraign
 7  the defendant?
 8              THE CLERK:  Mr. Warren, you understand the
 9  charges against you.  I ask you now, what is your plea as
10  to Counts One through Thirty-six, guilty or not guilty?
11              DEFENDANT WARREN:  I'm not guilty.
12              THE CLERK:  And do you request a trial by the
13  Court or by jury?
14              DEFENDANT WARREN:  I don't request a trial.
15              THE COURT:  All right.  Do you want -- well, you
16  have to say, one, do you want a jury trial where a jury
17  decides this issue, or do you want a bench trial where I,
18  as the judge, will decide?
19              DEFENDANT WARREN:  I'd like to do a jury.
20              THE COURT:  Okay.  Thank you very much.
21              You all may return to your seats.
22              All right, Ms. Jones.  Can you announce our
23  trial date, please.
24              THE CLERK:  Yes.  It is June 9th of 2025 at
25  9:15 a.m. for a ten-day jury trial.
```

1         THE COURT:  Okay.  So I'm going to -- go ahead,

2   Mr. Bender.

3         MR. BENDER:  What's the start time?

4         THE CLERK:  9:15.

5         MR. BENDER:  And that's for ten days?

6         THE CLERK:  Yes, sir.

7         THE COURT:  All right.  So I will issue my

8   scheduling order a little later.  I'm going to provide

9   some extra time for motions to be filed.

10        Mr. Coleman, is it my understanding that

11  Mr. Warren would not sign the agreed discovery order?

12        MR. COLEMAN:  Yes, Your Honor, that's correct.

13        THE COURT:  All right.  Okay.

14        I will -- well, I'm going to order you to comply

15  with discovery as if he signed the Court's discovery

16  order.

17        MR. COLEMAN:  Yes, Your Honor.

18        THE COURT:  All right.  And I will issue that.

19        Let me have a copy of that order.

20        MR. COLEMAN:  Yes, Your Honor.

21        THE COURT:  Okay.  We're going to fix the

22  signature page, Ms. Jones, and I'm going to enter it.

23        Let me see it.  All right.

24        All right, Mr. Warren.  So I know you didn't

25  sign this, but we have a standard discovery order in

1  federal court.  And so this is -- it outlines all of the

2  obligations of the prosecutor and what they're supposed to

3  turn over to you and when.  It also has some obligations

4  for you as a defendant, if there's certain evidence you

5  want to present and how you need to present that and what

6  you may or may not need to turn over to the prosecutor.

7  So all of this is in that order, and I've signed that.

8  All right?

9           All right.  I believe that's all we need to

10  address today.

11          Mr. Coleman, anything else from your

12  perspective?

13          MR. COLEMAN:  Not today, Your Honor.

14          There may be some requests from the

15  United States about how we provide discovery to Mr. Warren

16  while he's pro se, given that a lot of it contains

17  personal identifying information of people's identities

18  that he stole, allegedly, during the course of this case.

19          So we'll come up with a plan and propose it for

20  the Court.

21          THE COURT:  The plan I suggest is that you

22  confer with standby counsel, and that may be an easy way

23  to --

24          MR. COLEMAN:  Yes, Your Honor.

25          THE COURT:  -- or the most direct way to get the

1  discovery to -- and then Mr. Warren can arrange to get it

2  or look at it with standby counsel.

3          MR. COLEMAN:  Yes, Your Honor.  We will do that.

4  Thank you.

5          THE COURT:  Okay.  Thank you.

6          All right.  Mr. Warren, anything else from your

7  perspective today?

8          DEFENDANT WARREN:  Yes.  I'd like to ask how I

9  would like to go about tendering payment for my name

10 change as well as tendering the -- the official indictment

11 paper?

12         THE COURT:  All right.  What about -- let me --

13 do you have a copy of the indictment?

14         DEFENDANT WARREN:  Yes.  I'd like to tender it.

15         THE COURT:  I was asking my courtroom deputy.

16         Thank you.

17         All right.  What about your name is incorrect on

18 your indictment?

19         DEFENDANT WARREN:  As I mentioned before, I've

20 been prejudiced under the doctrine of idem sonans as I've

21 witnessed that the state has -- well, I'd like to rebut

22 these names that aren't my name as far as quotation marks,

23 $core, quotation marks, Saucegod, and then the all caps,

24 the all caps name.

25         THE COURT:  Okay.  So that motion is overruled.

1   So the all caps is just a font.  It's just a way that the

2   United States puts the name in there.  And the AKA $core

3   and AKA Saucegod, the government -- well, I will ask,

4   Mr. Coleman, does the government have some evidence that

5   those are nicknames associated with --

6              MR. COLEMAN:  Yes, Your Honor.

7              THE COURT:  -- Mr. Warren?

8              MR. COLEMAN:  Those are aliases of the

9   defendant, and we would present evidence of that at

10  trial --

11             THE COURT:  Okay.  All right.

12             MR. COLEMAN:  -- in June of next year.

13             THE COURT:  All right.  So that motion is

14  overruled.

15             All right.  Anything else, Mr. Warren?

16             DEFENDANT WARREN:  As well as tendering the --

17  tendering the indictment.

18             THE COURT:  I don't know what that means.

19             DEFENDANT WARREN:  Tender means to offer.  So I

20  would like to tender a birth certificate on the

21  indictment.

22             THE COURT:  I don't know what that means.

23             DEFENDANT WARREN:  You don't know what tender

24  means?

25             THE COURT:  I don't know what it means you want

1  to tender the indictment.

2           DEFENDANT WARREN:  Never mind, then.  That's

3  all.

4           THE COURT:  Thank you very much.

5           All right.  Ms. Jones, anything else?

6           THE CLERK:  Judge, you said his motion is

7  overruled, but did you mean denied?

8           THE COURT:  Denied, yes.

9           THE CLERK:  That's it, Your Honor.

10          THE COURT:  All right.

11          All right, Ms. Kozain.  Let's recess court.

12          (The proceeding concluded at 3:19 p.m.)

13                   REPORTER'S CERTIFICATE

14      I, Tracy J. Stroh, OCR, RPR, Notary Public in and for

15  the Commonwealth of Virginia at large, and whose

16  commission expires September 30, 2027, Notary Registration

17  Number 7108255, do hereby certify that the pages contained

18  herein accurately reflect the stenographic notes taken by

19  me, to the best of my ability, in the above-styled action.

20      Given under my hand this 11th day of April 2025.

21

                          /s/
22            _____
              Tracy J. Stroh, RPR

23

24

25